UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCHELLY FISHER,<br><br>                    Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>                    Defendant. | Case No.:  22-cv-339-W-AHG<br><br>**ORDER (1) GRANTING MOTION TO REMAND [DOC. 4] AND (2) TERMINATING MOTION TO DISMISS [DOC. 3] AS MOOT** |

   Pending before the Court is Plaintiff Schelly Fisher's motion to remand this case to the San Diego Superior Court.  Defendant opposes.

   The Court decides the matter on the papers submitted and without oral argument. See Civ. R. 7.1(d)(1).  For the following reasons, the Court **GRANTS** the motion to remand [Doc. 4] and **ORDERS** the case remanded.  In light of this order, Defendant's pending motion to dismiss [Doc. 3] is **TERMINATED** as moot.

//

//

//

1

I. **RELEVANT BACKGROUND**

This case arises from Plaintiff Schelly Fisher's purchase of a 2017 Ford Edge (the "Vehicle") from El Cajon Ford. (*Compl.* ¶ 4.[1]) The Complaint alleges that during the warranty period, the vehicle began exhibiting various symptoms of persistent defects, including "a loud clatter/knocking/rattle sound with the engine running; low coolant level; loss of coolant; abnormal burning smell from vehicle; coolant leaks into the engine cylinders; engine misfires; rough running; lack of power; hesitation on acceleration; and/or activation of the check engine light (in response to fault code P0302)." (*Id.* ¶ 7).

Fisher alleges that while under warranty, he took the Vehicle to Defendant Ford Motor Company's ("Ford") authorized repair facility. (*Compl.* ¶ 8.) However, Ford was unable to repair the Vehicle "to conform to the applicable express warranties within a reasonable number of opportunities." (*Id.*)

On February 9, 2022, Fisher filed a lawsuit against Ford in the San Diego Superior Court. The Complaint asserts five causes of action for: (1) Breach of Warranty Obligation to Provide Restitution or Replacement, Cal. Civ. Code § 1793.2(D)(2); (2) Breach of Obligation to Commence or Complete Repairs Within Thirty Days, Cal. Civ. Code § 1793.2(B); (3) Breach of Implied Warranty of Merchantability, Cal. Civ. Code § 1792; (4) Breach of Obligation to Supply Sufficient Service Literature or Replacement Parts, Cal. Civ. Code, § 1792(A)(3); and (5) Fraudulent Inducement – Concealment. (*See Compl.*) Fisher seeks, among other things, the entire purchase price, actual damages, restitution, a civil penalty of two times Plaintiff's actual damages, consequential and incidental damages, punitive damages, reasonable attorney's fees and costs, and prejudgment interest at the legal rate. (*Id.* at 10-11, prayer ¶¶ 1–7.)

On March 14, 2022, Ford removed the case to this Court based on diversity jurisdiction. (*Notice of Removal* [Doc. 1].) Fisher now moves to remand, arguing that

---

[1] The Complaint is attached to the Notice of Removal [Doc. 1] as Exhibit A [Doc. 1-2].

2

Ford cannot establish the amount in controversy exceeds $75,000. Ford responds that the amount-in-controversy requirement is satisfied by aggregating actual damages, a civil penalty, and attorney's fees.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution or a statute, which is not to be expanded by judicial decree." Id. (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. (internal citations omitted).

Consistent with the limited jurisdiction of federal courts, the removal statute is strictly construed against removal jurisdiction. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Id.

To determine whether the amount in controversy has been met on removal, "[t]he district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." Singer v. State Farm Mutual Auto Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997). Where the state-court complaint does not specify an exact damage figure, the defendant "must provide evidence that it is 'more likely than not' that the amount in controversy" satisfies the federal diversity-jurisdiction requirement. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).

In cases involving dismissal, the general test is that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). However, the "legal certainty" test must consider "where a rule of law or measure of

damages limits the amount of damages recoverable." See Morris v. Hotel Riviera, Inc., 704 F.2d 1113, 1115 (9th Cir. 1983).

**III.  DISCUSSION**

The Complaint does not specify a damage figure.  Fisher argues remand is required because Ford cannot establish that the amount in controversy exceeds $75,000.  (*P&A* [Doc. 4-1] 3:21–9:18.)  Ford responds that the jurisdictional amount-in-controversy requirement is satisfied by aggregating the restitution, a two-time civil penalty and typical attorney's fees in similar cases.  (*Opp'n* [Doc. 9] 2:13–16.)  For the reasons that follow, the Court finds Ford has failed to establish the amount in controversy exceeds $75,000.

**A.  Restitution**

Ford contends that the amount of restitution at issue (in the form of a statutory repurchase) totals $39,629.03.  (*Opp'n* 5:13–15.)  In his motion, Fisher argues this figure is inflated because Ford fails to account for two deductions to restitution.  (*P&A* 4:7–6:5.)

First, Fisher argues the amount of restitution must be deducted based on the Vehicle's usage/mileage.  (*P&A* 4:18–5:12.)  Under the Song Beverly Act, the buyer is entitled to reimbursement "in an amount equal to the purchase price…, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity."  Cal. Civ. Code § 1793.2(d)(1).  This deduction "is calculated based on the number of miles the buyer drove the car before the first relevant repair."  Cox v. Kia Motors America, Inc., 2020 WL 5814518, *3 (N.D.Cal. Sept. 30, 2020).  According to Fisher, the Vehicle's milage was 41,370 when he first "presented" the car to Ford for repair, resulting in a deduction of $13,000.  (*Id.* 5:13–24, n.2; *Chae Decl.* [Doc. 4-2] ¶¶ 2, 3.)  Ford responds that there is no evidence supporting Fisher's claim regarding the Vehicle's mileage when first taken for repair.  (*Opp'n* 6:4–7.)  However, Fisher's attorney declares that based on the repair records "available to [him], it appears that the first presentation of

the Subject Ford Edge to Ford's dealer was made at 41,370 miles." (*Chae Decl.* ¶ 3.) Accordingly, the Court finds a mileage/usage deduction of $13,000 is appropriate.

Fisher also contends a $10,145.99 deduction for negative equity is appropriate. (*P&A* 5:13–24.) This deduction is based on the negative equity from Fisher's trade-in vehicle that was rolled into the financing. (*Chae* ¶ 4.) Ford does not dispute that this deduction is appropriate or the amount of the negative equity. (*See Opp'n* n. 1; *Silverman Decl.* [Doc. 9-1] ¶ 11.) Instead, Ford insists that with even with the deduction, the amount in controversy exceeds $75,000. (*Opp'n* n. 1.) Accordingly, the Court also finds that the amount of restitution at issue should be reduced by negative equity.

Based on the deductions for mileage/usage and negative equity, the amount of restitution at issue is $16,483.04, not $39,629.03 as alleged by Ford.

### B. Civil Penalty

Ford's amount-in-controversy calculation also assumes a two-time civil penalty totaling $79,258.06. (*Opp'n* 5:18–20.) There are two problems with this calculation.

First, the Court is not convinced that a civil penalty should automatically be included in the calculation. In <u>Conrad Associates v. Hartford Accident & Indemnity Company</u>, 994 F.Supp. 1196 (N.D. Cal. 1998), an insurance company defendant in a bad-faith case argued punitive damages should be included in the amount in controversy calculation. As support, defendant attached a number of jury verdicts awarding punitive damages and asserted the average amount of those verdicts should be used to calculate the amount in controversy. <u>Id.</u> at 1200. The court rejected the argument because the "defendant has made no effort to compare the facts of those cases with the alleged facts of this case." <u>Id.</u> at 1201. The court reasoned that "Defendant's burden cannot be met simply by pointing out that the complaint seeks punitive damages and that any damages awarded under such a claim *could* total a large sum of money, particularly in light of the high burden that must be met in order for a plaintiff even to be eligible for receipt of discretionary punitive damages." <u>Id.</u>

1   Numerous other cases have followed the approach in Conrad.  In Pontiero v.
2 GEICO Gen. Ins. Co., 2017 WL 3475666 (C.D. Cal. Aug. 14, 2017), for example, the
3 court found that merely alleging the defendant acted intentionally did not provide
4 sufficient information to infer that punitive damages may be available.  Id. at *4.  In
5 Mendoza v. Subaru of Am., Inc., 2020 WL 1433427 (C.D. Cal. Mar. 24, 2020), the court
6 denied the inclusion of civil penalties reasoning that "while civil penalties are available
7 for willful failure to comply with the Song-Beverly Act, Defendant has not offered any
8 evidence to support such an award."  Id. at *2.  See also Simmons v. PCR Tech., 209 F.
9 Supp. 2d 1029, 1033 (N.D. Cal. 2002) (noting that in evaluating punitive damages in
10 context of the amount in controversy requirement, defendants may introduce evidence of
11 jury verdicts in cases involving analogous facts).

12   This Court also agrees with Conrad's approach.  Rather than simply assuming that
13 because a civil penalty is available, one will be awarded, the defendant must make some
14 effort to justify the assumption by, for example, pointing to allegations in the Complaint
15 suggesting such an award would be appropriate.  Such an approach appears more
16 consistent with the general principle that where the state-court complaint does not specify
17 a damage figure, the defendant "must provide evidence establishing that it is 'more likely
18 than not' that the amount in controversy" requirement is satisfied.  Sanchez v.
19 Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996); see also Matheson v.
20 Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003) (finding that in
21 evaluating amount in controversy, courts may consider facts presented in the removal
22 petition as well as any summary-judgment-type evidence).

23   Second, even assuming a civil penalty of two times the amount of restitution is
24 appropriate, Ford's contention that a civil penalty of $79,258.06 is erroneously based on
25 the purchase price of the vehicle before deducting for usage/milage and negative equity.
26 (*See Opp'n* 5:13–21.)  Instead, the civil penalty is calculated as a multiplier of the
27 plaintiff's actual damages.  See Ayala v. Ford Motor Co., No. 20-CV-02383-KSC, 2021
28 WL 2644506, at *4 (S.D. Cal. June 21, 2021) (using actual damages, offset by

deductions, to calculate the civil penalty); Degenhardt v. Ford Motor Co., No. 21-CV-1921-MMA (BLM), 2022 WL 103723, at *5 (S.D. Cal. Jan. 10, 2022) (finding the Song-Beverly Act requires a reduction for mileage and usage *before* assessing the amount of the civil penalty).  As a result, the civil penalty should be based on $16,469.04 in restitution discussed above.  Thus, the maximum civil penalty at issue in this case is $32,938.08.

### C.   Attorney's Fees

Ford also contends that attorney's fees in the amount of $20,000 should be included in the amount in controversy calculation.  Ford's contention is based on Pappas v. Ford Motor Co., 2021 WL 5810661, at *6 (S.D. Cal. Dec. 7, 2021) and Tapia v. Ford Motor Co., 2021 WL 5863597, at *3 (S.D. Cal. Oct. 19, 2019), which involved attorney's fee award of $21,165 and $22,828 respectively.  (*Opp'n* 8:7–19.)  Fisher argues there is "no evidence to support FORD's reliance on attorney fees as an element of damages for purposes of calculating the amount in controversy." (*P&A* 9:12–13.)  The Court disagrees.  Given Fisher's failure to provide any indication regarding her current fees, the Court is persuaded by Ford's reliance on similar cases from this district.  Accordingly, the attorney's fees in the amount of $20,000 are appropriate in evaluating the amount in controversy.

### D.   The Amount in Controversy

As discussed above, Ford has failed to attempt to justify the assumption that a civil penalty should be included in the amount in controversy in this case.  However, even assuming Ford demonstrated that a civil penalty should be applied, the record establishes that the amount in controversy is $69,421.12.  Because the amount in controversy does not meet the diversity jurisdictional minimum, the Court will grant Fisher's motion to remand.

## IV. CONCLUSION & ORDER

Because Defendant has not established the amount in controversy exceeds $75,000, the Court **GRANTS** Fisher's motion [Doc. 4] and **ORDERS** the case remanded to the San Diego Superior Court. In light of this order, Ford's motion to dismiss [Doc. 3] is **TERMINATED** as **MOOT**.

**IT IS SO ORDERED.**

Dated: June 15, 2022

Hon. Thomas J. Whelan
United States District Judge